UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,                              Case No. 19-cv-20029
                                             Hon. Matthew F. Leitman

v.

DOMINIQUE DUSHON GILBERT,

     Defendant.

_____/

## OPINION AND ORDER (1) DENYING DEFENDANT'S MOTION AND AMENDED MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255 (ECF Nos. 41, 50) AND (2) GRANTING A CERTIFICATE OF APPEALABILITY

In May 2019, Defendant Dominique Dushon Gilbert pleaded guilty to one count of possession of device-making equipment in violation of 18 U.S.C. § 1029(a)(4) and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A pursuant to a Rule 11 Plea Agreement.  In October 2019, the Court sentenced Gilbert to a term of 15 months in custody on the device-making count and 24 months in custody on the aggravated identity theft count.  The Court directed that the 24-month sentence for aggravated identity theft run consecutively to both the sentence on the device-making count and to an undischarged state sentence.  When the Court imposed this sentence, it expressed its belief that it was required to run the aggravated identity theft sentence consecutively to both of Gilbert's other sentences.

1

Gilbert has now filed a motion under 28 U.S.C. § 2255 to vacate his sentence. (*See* Mot., ECF No. 41; Am. Mot., ECF No. 50.[1])  He argues that his counsel was ineffective for (1) failing to argue that the Court had the discretion to run the aggravated identity theft sentence concurrent with the state sentence, (2) failing to seek a lower sentence under Section 5G1.3(b)(1) of the United States Sentencing Guidelines based upon time he spent in state custody prior to sentencing, and (3) failing to recognize and advise him that the time he spent in state custody would not be credited against the sentence imposed by the Court.  In related claims, Gilbert argues that in addition to the errors by his counsel, the Court independently erred when it concluded that it had to run the aggravated identity theft sentence consecutive to the state sentence and when it failed to adjust his sentence under Section 5G1.3(b)(1) for the time he served in state custody.

Gilbert's arguments raise important questions of first impression in this Circuit concerning whether 18 U.S.C. § 1028A requires a district court to run an aggravated identity theft sentence consecutive to an undischarged state sentence. Gilbert's arguments are also thoughtful and well-presented by his newly-appointed counsel.  However, for the reasons explained below, the Court respectfully disagrees

---

[1] Gilbert has filed both a motion to vacate his sentence (ECF No. 41) and an amended motion that contains additional argument (ECF No 51).  For ease of reference, the Court will refer to both motions collectively as the "motion."

with Gilbert's contentions and concludes that he is not entitled to relief from his sentence.  Accordingly, the Court will **DENY** Gilbert's motion.

# I

## A

On June 22, 2018, officers from the Mt. Morris Township Police Department executed a search warrant at a residence in which Gilbert was present. (*See* Crim. Compl., ECF No. 1, PageID.2.)  The officers discovered a substantial amount of evidence consistent with the production of fraudulent credit cards, gift cards, and personal identification cards. (*See id*., PageID.2-3.)  After completing the search, the officers arrested Gilbert. (*See id*.)   At the time of his arrest, Gilbert was on parole through the Michigan Department of Corrections (the "MDOC"). (*See id*.)  Upon Gilbert's arrest, he was returned to the custody of the MDOC as a parole violator.

On August 1, 2018, Gilbert was charged in this Court with possessing five or more false identification documents in violation of 18 U.S.C. § 1028(a)(3), producing counterfeit access devices in violation of 18 U.S.C. § 1029(a)(1), possessing 15 or more access devices in violation of 18 U.S.C. § 1029(a)(3), and possessing device-making equipment in violation of 18 U.S.C. § 1029(a)(4). (*See id.*, PageID.1.)

On August 6, 2018, this Court issued a writ of habeas corpus *ad prosequendum* to the MDOC directing it to produce Gilbert at the United States

Courthouse in Flint, Michigan on September 18, 2019, so that he could attend his initial appearance in this case. (*See Writ*, ECF No. 2, PageID.8.)  The MDOC delivered Gilbert as directed, and he appeared before the Court as scheduled on September 18, 2019. (*See* Audio File, ECF No. 4.)  On that same date, appointed counsel Barry Wolf filed an Appearance on behalf of Gilbert, and Wolf represented Gilbert at the initial appearance. (*See* Appearance, ECF No. 3.)  At the conclusion of the initial appearance, Gilbert consented to detention, and the Magistrate Judge issued a Consent Order of Detention. (*See* Order, ECF No. 6.)

Following the initial appearance, Gilbert was not sent back to an MDOC facility.  Instead, he was taken to the Genesee County Jail where he was detained at the direction of the United States Marshals Service.

## B

On January 16, 2019, a grand jury returned a two-count indictment against Gilbert. (*See* Indictment, ECF No. 10.)  The indictment charged Gilbert with one count of possession of device-making equipment in violation of 18 U.S.C. § 1029(a)(4) and one count of possession of a counterfeit access device in violation of 18 U.S.C. § 1029(a)(3). (*See id*.)  Gilbert was arraigned on the indictment on January 22, 2019. (*See* Dkt.)  At the time of the arraignment on the indictment, Gilbert was still being held at the Genesee County Jail at the direction of the United States Marshals Service.

4

Shortly after the arraignment, the Court entered a Criminal Trial and Scheduling Notice (the "Notice"). (*See* Notice, ECF No. 13.)  The Notice set a plea cutoff date of February 25, 2019, and a trial date of April 2, 2019. (*See id*.)  Wolf and counsel for the Government thereafter stipulated to the entry of two orders extending the dates in the Notice. (*See* Orders, ECF Nos. 14, 15.)

## C

In May 2019, Gilbert agreed to a plea deal.  The agreement was memorialized in a Rule 11 Plea Agreement. (*See* Plea Agmt., ECF No. 20.)   The Plea Agreement provided that Gilbert would plead guilty to two charges that had been filed by way of a Superseding Information: one count of possession of device-making equipment in violation of 18 U.S.C. § 1029(a)(4) and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. (*See id*., PageID.59.)  The Plea Agreement further provided that "[p]ursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure the sentence of imprisonment in this case may not be less than 15 months on count one of the superseding information [which charged possession of device-making equipment] and not less than 24 months on count two of the superseding information [which charged aggravated identity theft] and consecutive to any sentence imposed on count one." (*Id*., PageID.63.)

Gilbert appeared before the Court to enter his plea on May 28, 2019. (*See* 5/28/19 Plea Hr'g Tr., ECF No. 32.)  As part of the plea colloquy, the Court advised

Gilbert that in connection with his plea of guilty to the aggravated identity theft charge, he would "be ordered to serve a mandatory term of two years that will run consecutive to any other term of imprisonment that I impose in this case." (*Id.*, PageID.128.)  The Court did not advise Gilbert that it would be required to run his aggravated identity theft sentence consecutive to any state sentence that he would be serving in connection with his parole violation.  The Court scheduled Gilbert's sentencing for September 30, 2019.  The Court later re-scheduled the sentencing for October 1, 2019.

At the time of Gilbert's plea hearing on May 28, 2019, Gilbert was still detained in the Genesee County Jail at the direction of the United States Marshals Service.

## D

Roughly two months after Gilbert's plea hearing, on July 19, 2019, the Michigan Parole Board entered an order formally revoking Gilbert's parole. (*See* Notice of Parole Board Action, ECF No. 47-4, PageID.253; Stipulation, ECF No. 55, PageID.309.)   The Parole Board based its decision to revoke Gilbert's parole on its determination that Gilbert "cannot be managed in the community." (Notice of Parole Board Action, ECF No. 47-4, PageID.255.)

**E**

As the parties prepared for sentencing, the Court's Probation Department informed Wolf that Gilbert would not be receiving credit against his sentence for the time that Gilbert had served in the Genesee County Jail from the time of Gilbert's initial appearance through the sentencing hearing.  Gilbert would not be credited for that time because (1) he technically remained in the custody of the MDOC during his incarceration at the Genesee County Jail[2], (2) this time would be credited against his state sentence, and (3) under 18 U.S.C. § 3585(b), he could not receive credit against his federal sentence for the time he spent in custody before trial that would be credited against his state sentence.

---

[2] Although the United States Marshals Service had physical control over Gilbert while he was in the Genesee County Jail, he was not technically in federal custody during that time because he had been transferred to the Marshals Service pursuant to the writ of habeas corpus *ad prosequendum*.  When the MDOC delivers an inmate to federal authorities pursuant to such a writ, the MDOC retains legal custody over the inmate even though it has relinquished physical custody. *See Jake v. Herschberger*, 173 F.3d 1059, 1061 n.1 (7th Cir. 1999) ("Because the receiving sovereign merely obtains limited jurisdiction over the 'borrowed' prisoner, the prisoner is still under the jurisdiction of the sending sovereign, and is considered to be in the custody of the sending sovereign not the receiving sovereign"); *United States v. Kelly*, 661 F.3d 682, 686 (1st Cir. 2011) (explaining that "the nature of the writ [of habeas *ad prosequendum*] is such that the sending state retains full jurisdiction over the prisoner since the prisoner is only 'on loan' to the prosecuting jurisdiction") (internal quotation marks omitted); *Woodson v. Salinas*, 2017 WL 2701924, at *3 (E.D. Ky. June 22, 2017) (noting that "a state prisoner borrowed by federal marshals pursuant to a writ [of habeas *ad prosequendum*] effects only a temporary change in physical custody, not legal custody, and that time is credited against the state sentence").

Wolf was surprised to learn that Gilbert would not receive credit against his federal sentence for his time spent in the Genesee County Jail.  Indeed, before Gilbert had entered his guilty plea, Wolf had advised Gilbert that he *would* receive credit for that time.   Wolf explained the situation to the Court in the sentencing memorandum that he filed on Gilbert's behalf. (*See* Sent. Memo., ECF No. 22.)  He wrote:

> As Mr. Gilbert has been in federal custody since July 10, 2018, he and counsel believed this time would count against his federal sentence but not be counted against his state time. This has turned out to be apparently incorrect. According to probation, because Mr. Gilbert is in federal custody pursuant to a writ he is not receiving any federal credit. While Mr. Gilbert will continue to receive credit against his state (MDOC) time it is his belief that had he remained with MDOC he would have been paroled and returned to federal custody months ago.

(*Id.*, PageID.79.)

At the sentencing hearing, Wolf again informed the Court that his advice to Gilbert concerning credit against his federal sentence for the time spent in custody had turned out to be wrong:

> MR. WOLF:  But there is something that I want to bring to the Court's attention.  I brought it to Miss Abraham's attention.  I put it in the sentencing memo in a footnote. And it concerns me because quite frankly, I feel that I didn't do an adequate job in advising my client in terms of how time counts and that -- that troubles me.
>
> I mean, he was – as the Court knows, he was initially arrested.  He was held on a parole violation with the State of Michigan, with the Department of Corrections.  Three months later, he was then arraigned in Federal Court and

8

> he has been held by the -- by the federal government since September but he was here on a writ.
>
> I believed that all of his time, because he was here, being held by the feds, by the marshal service, that his time would count.  And though Mr. Gilbert and I spoke about how his time was counting and whether he would have to go back and do time with the DOC or if his time was counted here, we both believed his time was counted here and we believed that he would be getting credit for this time.
>
> And once we got the pre-sentence report and saw that because he was here on a writ, that while the time was counting against his parole violation, it wasn't counting for his federal time.  And so obviously, that's -- that's a concern.  He has been detained for 15 months, I believe, at this point or I guess it's – it's 13 months and –

(Sentencing Tr., ECF No. 33, PageID.145-146.)

The Court then questioned whether Gilbert had suffered prejudice as a result of not having his time in custody applied against his federal sentence. (*See id.*, PageID.147.)  The Court noted that the time in custody *would* be credited towards the state parole-violation sentence and that the time in custody could *not* be credited against both sentences. (*See id.*)  In the colloquy set forth below, the Court asked Wolf to explain how Gilbert suffered an injury under these circumstances, and Wolf offered Gilbert's theory as to how he was harmed:

> THE COURT: So what I'm trying to get at in a round-about way is, I understand that he, as a technical matter, doesn't get credit for the time here but is this a situation where in essence, it all comes out in the wash because he's

facing a sentence here and a state sentence so he's not going to be doubly counted against?

MR. WOLF: Possibly. What – what Mr. Gilbert believes is that had – had we known that this time would not have counted against his federal time and he had gone back and done his state time, that he believes he would have already been paroled through the state and then turned over to the feds. So whatever time he started after that, would have been counted. So that there's – there's a period of months there that he believes he wouldn't have done with the state that he would have gotten credit for with the feds. And I appreciate that there's speculation on his part but he believes that there would have been at least a few months, maybe upwards of six or more, that he would have gotten credit for.  But I also understand, as does he, that the Rule 11 says that he has to do at least 39 months. From my perspective, had that been clear from the get-go, then it may have created some additional negotiating abilities on my part to have gotten rid of at least the 39 months. But I think it's important to put it on the record so everyone knows that it's – Mr. Gilbert and I have spoken about that before but it's on the record so if it comes up later, there is no question about it.

(*Id*., PageID.147-148.)

After Wolf offered this theory as to how Gilbert had been harmed, the Court confirmed with Gilbert that he still wished to proceed with sentencing notwithstanding Wolf's prior erroneous advice that he would receive credit against his federal sentence for his time served:

THE COURT: All right. Will you pull that microphone a little closer to Mr. Gilbert? Mr. Gilbert, to Mr. Wolf's credit, he candidly acknowledged that there was perhaps a misunderstanding about how time would be credited. And I want to make sure that it sounds like you and Mr. Wolf

10

have talked about that, you understand the issue and that notwithstanding that assumption you guys had about how time would be credited, you still want to stick with this plea and move forward and have me impose sentence. Is that correct?

THE DEFENDANT: Yes, sir.
THE COURT: Okay. Is there anything at all that you want to say? Any concerns you want to raise? Anything? Now is the time.

THE DEFENDANT: No, sir.

THE COURT: Okay. You're still fully satisfied with Mr. Wolf's representation?

THE DEFENDANT: Yes, sir.

(*Id*., PageID.150-151.)

At that point in the proceedings, Wolf asked the Court to run Gilbert's entire sentence concurrent with his state parole-violation sentence. (*See id*.)  In response, the Court expressed its understanding – based upon its recent experience in another sentencing for an aggravated identity theft conviction – that Gilbert's sentence on the aggravated identity theft count had to run "consecutive to *all* other sentences," including Gilbert's state parole-violation sentence.[3] (*Id*.; emphasis added.)  The Court asked Wolf if he "agree[d] with that," and Wolf said, "I do, Judge." (*Id*.)

---

[3] At the time Gilbert entered his plea, he was not advised that his aggravated identity theft sentence would run consecutively to his undischarged state sentence.  Instead, as noted above, he was advised only that the sentence would run consecutive to his federal sentence for possession of device-making equipment.  Nonetheless, Gilbert did not ask to withdraw his plea at sentencing when the Court stated its newfound

The Court then heard from the Government.  Because the Court had already indicated that it would run Gilbert's aggravated identity theft sentence consecutive to his state parole-violation sentence, the Government focused on persuading the Court to also run the possession of device-making equipment sentence consecutive to the state sentence.  The Government argued that a concurrent sentence on the possession of device-making count would result in too little punishment.

The Court ultimately imposed upon Gilbert the minimum possible sentence permitted under the Rule 11 Plea Agreement: 15 months in custody on the device-making count and 24 months in custody on the aggravated identity theft count.  The Court ordered that the 24 months in custody on the aggravated identity theft count would run consecutively to both (1) the 15-month sentence on the device-making count (as specifically required by the Rule 11 Plea Agreement) and (2) Gilbert's state parole-violation sentence. (*See* Judgment, ECF No. 26, PageID.99.)  The Court ordered that Gilbert's 15-month sentence on the device-making charge would run concurrent with his undischarged state parole-violation sentence. (*See id.*)

**F**

On October 9, 2019, Gilbert, through new counsel, filed an appeal in the United States Court of Appeals for the Sixth Circuit. (*See* Notice of Appeal, ECF

---

understanding that the aggravated identity theft sentence had to run consecutively to his state parole-violation sentence.  And he still has not requested to withdraw his plea on that basis.

No. 27.)  In his appeal, he raised a single issue:

> Did Gilbert receive ineffective assistance of counsel when defense counsel mistakenly told Gilbert that he would receive credit while in pretrial custody when in fact he would not because he was in United States custody pursuant to a writ from the Michigan Department of Corrections?

(Mot., ECF No. 41, PageID.193, quoting appeal brief.)

The Sixth Circuit affirmed Gilbert's conviction "because direct appeal is not the proper vehicle to address Gilbert's claim of ineffective assistance of counsel." *United States v. Gilbert*, 838 F. App'x 181, 182 (6th Cir. 2021).  That court determined that Gilbert's claim should be resolved in "post-conviction proceedings" under 28 U.S.C. § 2255. *See id.* at 183.

## G

On March 12, 2021, Gilbert, through his third appointed lawyer, filed the instant motion for relief from sentence under 28 U.S.C. § 2255. (*See* Mot., ECF No. 41.).  In the motion, Gilbert contends that he was deprived of the effective assistance of counsel.   More specifically, Gilbert asserts that Wolf provided deficient representation in three respects: (1) by erroneously advising him (Gilbert) that he would receive credit against his federal sentence for his time spent in the Genesee County Jail; (2) by failing seek remedial relief under Section 5G1.3(b)(1); and (3) by failing to correct the Court's purportedly-mistaken belief that it had to run the

aggravated identity theft sentence consecutive to the state parole-violation sentence.

(*See id.*, PageID.199.)

Gilbert submitted an affidavit from Wolf in support of the motion. (*See* Wolf

Aff., ECF No. 41-3.)  As relevant here, Wolf attested:

> 6. When the issue of credit for time served came up, I told Mr. Gilbert that he would receive credit against his federal sentence for the time he spent in the custody of the federal Marshals, that began on September 18, 2018 until his sentence.

> 7. Mr. Gilbert believed that his state time for parole violation would be either 6 or 12 months. Receiving credit for time served in federal custody toward his federal sentence was important.

> 8. It was not until I reviewed the Presentence Investigation Report and spoke to the probation officer that I realized my statement to Mr. Gilbert was wrong under the law and that he would not receive any credit for time served on his federal sentence, but the time would be credited to his state parole violation.

> 9. I advised Mr. Gilbert of my error and his right to withdraw from the Rule 11 Plea Agreement and that I would advise the court of my error. We agreed it was not in his best interest to withdraw his plea.

> 10. I brought this misconception to the judge's attention in my sentencing memorandum and at the sentencing hearing.

> 11. Had I been aware that Mr. Gilbert would not have received credit for time served on his federal sentence, I would have expedited his guilty plea and sentence.

12. I did not seek any remedial relief due to my mistake through the sentencing judge.

13. I was not aware that the U.S.S.G. § 5G 1.3 may have been available to adjust Mr. Gilbert's sentence downward to account for the time served that the Bureau of Prisons would not give him credit for on his federal sentence and for a concurrent sentence.

14. At sentencing, I agreed that the sentence on Count 2, Aggravated Identity Theft, had to run consecutive to all other sentences, including his undischarged state sentence.

15. Any mistake of law that I may have made regarding credit for time served, the consecutive sentence to his undischarged state sentence on Count 2, or my failure to seek any relief from the sentencing court under the sentencing guidelines, was not a matter of strategy.

(*Id.*, PageID.216-218.)

On April 15, 2021, Gilbert filed an amendment to his motion to add two claims that he had omitted from his original motion. (*See* Am. Mot., ECF No. 50.)  As noted above, in the original motion, Gilbert argued that Wolf was ineffective for (1) failing to correct the Court's supposedly-mistaken belief that it had to run the aggravated identity theft sentence consecutive to the state parole-violation sentence and (2) failing to seek an adjustment of Gilbert's sentence under Section 5G1.3(b)(1) for the time Gilbert spent in the Genesee County Jail.  In the amended motion, Gilbert presented the bases of these ineffective assistance claims "as free-standing arguments as violations of his due process rights and of the laws of the United States, not dependent on the [ineffective assistance of counsel] claim." (*Id.*, PageID.270.)

Stated another way, in the amended motion, Gilbert argued that wholly apart from any errors committed by Wolf, the Court erred when it concluded that it had to run the aggravated identity theft sentence consecutive to the state parole-violation sentence and when it failed to adjust Gilbert's sentence under Section 5G1.3(b)(1).

The Court held a video hearing on Gilbert's motion on June 7, 2021.

## II

## A

Gilbert has moved to vacate his sentence under 28 U.S.C. § 2255.  That statute "is the primary avenue for relief for federal prisoners protesting the legality of their sentence." *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001).  It provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  "In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so

fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334

F.3d 491, 496-97 (6th Cir. 2003) (internal quotation marks omitted).

## B

Ineffective assistance claims are governed by the familiar standard described

in *Strickland v. Washington*, 466 U.S. 668 (1984).  The Sixth Circuit has described

how courts apply *Strickland* as follows:

> To establish ineffective assistance of counsel, a defendant must show that: (1) his trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002). The first prong of this test requires [a defendant] to show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. This standard is highly deferential, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. Under the second prong, [a defendant] must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Counsel's performance must have so "undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. The reviewing court must determine if the proceeding was "fundamentally unfair or unreliable; a court should not focus the analysis on the outcome." *Kinnard*, 313 F.3d at 935.

*Mallett*, 334 F.3d at 497.

**III**

The Court begins with Gilbert's related claims that (1) the Court erred when it concluded that it had to run his aggravated identity theft sentence consecutive to his state parole-violation sentence and (2) Wolf was ineffective for failing to object to the Court's error.  Both of these claims fail for the same reason.  They rest upon the essential premise that the Court had the discretion to run the aggravated identity theft sentence concurrent with the state parole-violation sentence, but that premise is incorrect.

**A**

The plain language of the aggravated identity theft statute, 18 U.S.C. § 1028A, unambiguously required the Court to run the aggravated identity theft sentence consecutive to the state parole-violation sentence.  The statute provides that – with one narrow exception for sentences on multiple counts of aggravated identity theft imposed at the same time – "*no term of imprisonment imposed on a person under this section shall run concurrently with any other term of imprisonment imposed on the person under any other provision of law,* including any term of imprisonment imposed for the felony during which the means of identification was transferred, possessed, or used." 18 U.S.C. § 1028A(b)(2) (emphasis added).  There is "no reason to exclude state sentences from the ambit of this provision." *United States v. Usher*, 789 F. App'x 585, 586 (9th Cir. 2020) (holding that district court was required to

run aggravated identity theft statute consecutive to undischarged sentences for state-law offenses).  Indeed, because a state custodial sentence plainly qualifies as an "other term of imprisonment imposed under any other provision of law" under Section 1028A(b)(2), the statute "requires" district courts to run aggravated identity theft sentences "consecutively" to state sentences. *United States v. Lingatong*, 490 F. App'x 68, 69 (9th Cir. 2012). *See also United States v. Ward*, 793 F. App'x 629, 630 (9th Cir. 2020) (explaining that a district court "has no discretion" and "must run" an aggravated identity theft sentence consecutive to a state sentence).

The United States Supreme Court's decision in *United States v. Gonzales*, 520 U.S. 1 (1997), confirms that the plain language of Section 1028A(b)(2) required the Court to run Gilbert's aggravated identity theft sentence consecutive to his state parole-violation sentence.  *Gonzales* involved 18 U.S.C. § 924(c), a statute that prohibits, among other things, the use of a firearm during and in relation to certain drug trafficking crimes.  Section 924(c), like Section 1028A(b)(2), prohibits district courts from imposing a sentence "concurrently with any other term of imprisonment." *Id.* at 3 (quoting statute). In *Gonzales*, the Supreme Court was "asked to decide whether a federal court may direct that a prison sentence [for using a firearm during and in relation to a drug trafficking crime] under 18 U.S.C. § 924(c) run concurrently with a state-imposed sentence even though § 924(c) provides that a sentence imposed under that statute 'shall [not] run … concurrently with any other

19

term of imprisonment.'" *Id*. at 2-3 (quoting 18 U.S.C. § 924(c).  The Supreme Court

held that a district court "may not" do so. *Id*. at 3.  It explained:

> The question we face is whether the phrase "any other term of imprisonment" "means what it says, or whether it should be limited to some subset" of prison sentences, *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980)—namely, only federal sentences. Read naturally, the word "any" has an expansive meaning, that is, "one or some indiscriminately of whatever kind." Webster's Third New International Dictionary 97 (1976). Congress did not add any language limiting the breadth of that word, and so we must read § 924(c) as referring to all "term[s] of imprisonment," including those imposed by state courts. Cf. *United States v. Alvarez–Sanchez,* 511 U.S. 350, 358, 114 S.Ct. 1599, 1604, 128 L.Ed.2d 319 (1994) (noting that statute referring to "any law enforcement officer" includes "federal, state, or local" officers); *Collector v. Hubbard,* 12 Wall. 1, 15, 20 L.Ed. 272 (1871) (stating "it is quite clear" that a statute prohibiting the filing of suit "in any court" "includes the State courts as well as the Federal courts," because "there is not a word in the [statute] tending to show that the words 'in any court' are not used in their ordinary sense"). There is no basis in the text for limiting § 924(c) to federal sentences.

*Id*. at 5.

As *Gonzales* makes clear, a district court "must read" the phrase "any term of

imprisonment" in Section 1028A(b)(2) "as referring to all 'terms of imprisonment,'

including those imposed by state courts." *Id*.

The structure of the aggravated identity theft statute further confirms that the

statute prohibits district courts from running aggravated identity theft sentences

concurrently with state sentences.  As noted above, the statute does recognize one

narrow exception to the ban on concurrent sentences.  That exception is found in subsection (b)(4) of the statute, which provides in relevant part that "a term of imprisonment imposed on a person for a violation of this section may, in the discretion of the court, run concurrently, in whole or in part, *only with another term of imprisonment that is imposed by the court at the same time on that person for an additional violation of this section*…." 18 U.S.C. § 1028A(b)(4) (emphasis added). In subsection (b)(4), Congress carefully identified the "only" sentence to which an aggravated identity theft sentence may run concurrently, and that sentence is not one imposed by a state court.  This underscores that the Court lacked the discretion to run Gilbert's aggravated identity theft sentence concurrently with his state sentence.

**B**

Gilbert offers three counterarguments as to why the Court had the discretion to run his aggravated identity theft sentence concurrently with his state parole-violation sentence.  All of his contentions are thoughtful, but none persuade the Court that it could have run the sentences concurrently.

**1**

Gilbert first offers a competing interpretation of Section 1028A(b)(2).  He argues that "[t]he pertinent controlling word in the statute is 'imposed.'" (Gilbert Reply Br., ECF No. 52, PageID.292.)  He then highlights that the statute precludes a district court from running an aggravated identity theft sentence concurrent with

"any other term of imprisonment *imposed on the person*." (*Id*.; emphasis added by Gilbert.)   And he argues that "[w]hen read in its entirety[,] the phrase 'under any term of imprisonment' is modified to refer [only] to the imposition of any other term of imprisonment *at the time of sentencing*." (*Id*.; emphasis added by Gilbert.)   Simply put, according to Gilbert, Section 1028A(b)(2) only requires a district court to run an aggravated identity theft sentence consecutive to the other sentences that the court imposes at the same time; he insists that a district court retains discretion to run an aggravated identity theft sentence concurrent with any sentence imposed at a different time – including a sentence imposed by a state court at an earlier time. (*See id*.)  In support of this interpretation, Gilbert directs the Court to the statement by the United States Court of Appeals for the Eighth Circuit that an aggravated identity theft sentence "must run consecutively to any other term of imprisonment imposed by the court *at the same time*." (*Id*., quoting *United States v. Lee*, 545 F.3d 678, 680 (8th Cir. 2008); emphasis added by Gilbert.)

But a careful reading of Section 1028A(b), in its entirety, shows that Gilbert's reading of Section 1028A(b)(2) cannot be correct. *See*, *e.g.*, *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 377 F.3d 592, 596–97 (6th Cir. 2004) (explaining that under a "longstanding cannon of statutory construction," courts "should read statutes as a whole").  As noted above, a different subsection of Section 1028A(b), subsection (b)(4), provides that a district court may run an aggravated identity theft

sentence concurrent with another aggravated identity theft sentence that "is imposed by the court *at the same time*." 18 U.S.C. § 1028A(b)(4) (emphasis added). Subsection (b)(4) shows that Congress knew how to refer to sentences imposed "at the same time" when it had such sentences in mind.  If Congress had intended for the ban on concurrent sentences in Section 1028A(b)(2) to apply only to sentences imposed "at the same time," it would have expressly said so – just as it did in Section 1028A(b)(4).

The Eighth Circuit did not hold to the contrary in *Lee*.  The issue in *Lee* was whether the district court erred when, at a *single* sentencing proceeding, it decided to run the defendant's multiple aggravated identity theft sentences consecutive to one another. *See Lee*, 545 F.3d at 680.   Thus, any language in *Lee* that arguably suggests that a district court may run an aggravated identity theft sentence concurrent with any sentence that was not imposed "at the same time" is dicta.  Moreover, that dicta is not particularly persuasive with respect to the issue before this Court because there is no reason to believe that the Eighth Circuit in *Lee* was closely focused on whether Section 1028A(b)(2) applies only to sentences imposed at the same time.

## 2

Gilbert next argues that a different statute, 18 U.S.C. § 3584(a), authorized the Court to run his aggravated identity theft sentence concurrently with his undischarged state sentence.  That statute provides, in relevant part, that "if a term

of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently *or* consecutively." 18 U.S.C. § 3584(a) (emphasis added).  Gilbert directs the Court to statements by the Sixth Circuit that under this statute, a "district court has discretion to order a federal sentence to run either concurrently or consecutively to an undischarged [state] term of imprisonment." (Mot., ECF No. 41, PageID.204, quoting *United States v. Gibbs*, 626 F.3d 344, 349 (6th Cir. 2010).)

Gilbert's reliance on Section 3584(a) is misplaced because that statute does not control over Section 1028A(b)(2).  As described in detail above, Section 1028A(b)(2) *specifically* addresses when aggravated identity theft sentences may run concurrently and consecutively. Section 3584(A), in contrast, provides general direction concerning the imposition of concurrent sentences upon a defendant who is serving another undischarged sentence.  It is well-established where a specific statute and a general one both apply, the specific statute controls over the general one. *See Crawford Fitting Co. v. J.T. Gibbons*, Inc. 482 U.S. 437, 445 (1987). (explaining that a specific statute controls over a general one).   Thus, in Gilbert's case, Section 1028A(b)(2) controlled over Section 3584(a) and mandated that his aggravated identity theft sentence run consecutively to his undischarged state parole-violation sentence.

**3**

Finally, Gilbert argues that Section 5G1.3(b)(2) of the United States Sentencing Guidelines required the Court to run his aggravated identity theft sentence concurrently with his undischarged state parole-violation sentence. Section 5G1.3(b)(2) provides that if a "term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction," then " the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b)(2). Gilbert contends that this provision applies to him because (1) the conduct underlying his state parole violation was relevant conduct to his aggravated identity theft conviction and (2) a term of imprisonment resulted from the parole violation. Gilbert says that since the Section 5G1.3(b)(2) applies, his aggravated identity theft sentence had to run concurrently with the state parole-violation sentence.

But even if Section 5G1.3(b)(2) applies to Gilbert, it cannot displace Section 1028A(b)(2). To the extent that Section 5G1.3(b)(2) requires a concurrent sentence, it conflicts with the requirement in Section 1028A(b)(2) that the sentences run consecutively, and in the event of a conflict between a provision of the Sentencing Guidelines and a statute, "the statute controls." *United States v. Smith*, 354 F.3d 171, 175 (2d Cir. 2003). Thus, in Gilbert's case, Section 1028A(b)(2) trumped Section

5G1.3(b)(2) and mandated that his aggravated identity theft sentence run consecutive to his undischarged state parole-violation sentence.

Not so fast, says Gilbert. He insists that the Sixth Circuit has already ruled that notwithstanding Section 1028A(b)(2), Section 5G1.3 gives district courts the discretion to run an aggravated identity theft sentence concurrently with an undischarged state sentence. He directs the Court to the decision in *United States v. Potts*, 947 F.3d 357 (6th Cir. 2020). The defendant in *Potts* pleaded guilty to "one count of unauthorized-access-device fraud and two counts of aggravated identity theft." *Id*. at 362. The district court imposed a 60-month sentence on the unauthorized-access-device fraud conviction and 24-month sentences on each of the aggravated identity theft convictions, and the court decided to run all of these sentences consecutively. *See id*. Potts' total sentence was thus nine years.

By the time Potts appeared for sentencing, he had begun serving "a sentence for a domestic violence conviction in Michigan state court." *Id*. at 369. The district court then had to decide whether to run the sentences on Potts' federal convictions consecutively or concurrently to his state sentence. Potts urged the court to run the federal sentences concurrent with the state sentences. *See id*. at 364. The Government opposed that request. *See id*. It argued that the circumstances warranted consecutive sentences. Notably, however, there is no indication that the Government also argued that Section 1028A(b)(2) prohibited categorically prohibited the district

court from running Potts' two 24-month aggravated identity theft sentences concurrently to his state sentence. After hearing the parties' arguments, the district court decided to run Potts' aggravated identity theft sentence consecutive to his state domestic violence conviction. *See id*. Potts did not object to the district court's decision to run the sentences consecutively. *See id*.

In the Sixth Circuit, Potts argued that the district court committed a procedural error when it decided to run his federal sentences consecutive to his state sentence. He claimed that the district court "failed to expressly reference [Section] 5G1.3 before deciding whether to run his federal and state sentences concurrently." *Id*. at 369. He invoked Section 5G1.3 because one of the Application Notes to that provision "articulates factors sentencing courts should consider before deciding whether to run state and federal sentences concurrently." *Id*. Once again, the Government did not respond to Potts' argument by contending that Section 1028A(b)(2) precluded the district court from running Potts' two 24-month aggravated identity theft sentences concurrently to Potts' state sentence. Instead, the Government treated Potts' three-part federal sentence (consisting of 60 months on the access-device conviction plus 24 months on each of the two identity theft convictions) as a unitary sentence that the district court could have chosen to run concurrently under Section 5G1.3. The Government argued that the district court's sentence should stand because even though the court did not expressly reference the

27

Application Note to Section 5G1.3, the court had sufficiently considered the factors in the Note. (*See* Gv't. Br., *United States v. Potts*, Sixth Cir. Case No. 18-1961, Dkt. No. 34 at 39-46.)

The Sixth Circuit agreed with the Government. Reviewing only for plain error (because Potts failed to object), the Sixth Circuit concluded that the district court "adequately considered" the factors in the Application Note to 5G1.3. *Potts*, 947 F.3d at 369-70. The Sixth Circuit therefore affirmed the district court's decision to run Potts' federal sentences consecutively to his state sentence.

Gilbert argues that the Sixth Circuit *necessarily* concluded that notwithstanding Section 1028A(b), Section 5G1.3 authorizes a district court to run an aggravated identity theft sentence concurrent with an undischarged state sentence. He insists that it would have made no sense for the Sixth Circuit to have analyzed whether the district court abused its discretion in running the sentences concurrently unless the Sixth Circuit had first concluded that the district court had the discretion to do so under Section 5G1.3. That is a fair point. Moreover, when reciting the procedural background of the case, the Sixth Circuit said, "pursuant to U.S.S.G. 5G1.3(d), the district court had discretion to run [Potts'] nine-year sentence concurrently, partially concurrently, or consecutively to Potts's not-yet-completed state term of imprisonment." *Id*. at 364. This further supports Gilbert's reading of *Potts*.

28

The Court nonetheless concludes that *Potts* cannot reasonably be read as *holding* that despite Section 1028A(b), Section 5G1.3 permits a district court to run an aggravated identity theft sentence concurrently with an undischarged state sentence. "For a court's conclusion about an issue to be part of its holding," (1) the court's resolution of the issue "must contribute to the judgment," (2) "it must be clear that the court intended to rest the judgment (if necessary) on its conclusion about the issue," and (3) "it must be clear that the court considered the issue and consciously reached a conclusion about it." *Wright v. Spaulding*, 939 F.3d 695, 701-02 (6th Cir. 2019) (quotations and citations omitted).  Under this test, it is clear that the Sixth Circuit in *Potts* did not hold that Section 5G1.3 supersedes the prohibition in Section 1028A(b)(2) against running an aggravated identity theft sentence concurrently with any other sentence.  Neither of the parties presented arguments concerning the operation of Section 1028A(b)(2) with respect to undischarged state sentences, and there is no indication that the Sixth Circuit considered how Section 1028A(b)(2) interacts with Section 5G1.3.   Most importantly, the Sixth Circuit did not say that Section 1028A(b)(2) gives way to Section 5G1.3.  Simply put, at most, the Sixth Circuit in *Potts* assumed – *without* squarely deciding – that notwithstanding Section 1028A(b)(2), under Section 5G1.3, a district court may run an aggravated identity theft sentence concurrently with an undischarged state sentence.  That assumption cannot override the plain language of Section 1028A(b)(2) and the

Supreme Court's decision in *Gonzales* – both of which compel the conclusion that a district court may *not* run an aggravated identity theft sentence concurrently with an undischarged state sentence.

## C

For all of the reasons explained above, Section 1028A(b)(2) required the Court to run Gilbert's aggravated identity theft sentence consecutively to his undischarged state parole-violation sentence. Thus, the Court did not err in doing so, and Wolf was not ineffective in failing to object to the Court's decision to do so. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) (explaining that an attorney is not ineffective for failing to make a futile objection).

## IV

The Court now turns to Gilbert's claims related to Section 5G1.3(b)(1) of the Sentencing Guidelines.[4] That provision states, in relevant part, that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction," then "the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." U.S.S.G. § 5G1.3(b)(1). As noted above, Gilbert

---

[4] Gilbert's claims related to Section 5G1.3(b)(1) differ from his arguments related to Section 5G1.3(b)(2), which are addressed in the prior portions of this Opinion and Order.

contends that his parole violation was relevant conduct to his aggravated identity theft conviction.  Moreover, it is undisputed that the time Gilbert served in MDOC custody from the time of his arrest through the time of his sentencing in this case will not be "credited to [his] sentence by the Bureau of Prisons." *Id.*  From this, Gilbert concludes that the Court was required to "adjust his sentence" for that period of time.  He contends that the Court erred in failing to do so and that Wolf was ineffective for not objecting to the Court's error.

These claims for relief are foreclosed by the terms of Gilbert's Rule 11 Plea Agreement.  That agreement – which Gilbert freely negotiated and which the Court accepted – required the Court to impose a sentence of not less than 39 months in custody. (*See* Plea Agmt., ECF No. 20, PageID.63.)   Because Gilbert freely negotiated away any right he may have had – on any basis – to seek and/or receive a sentence of less than 39 months, he is not entitled to relief on the ground that the Court failed to "adjust" his sentence below 39 months based upon his time spent in custody before sentencing.  Likewise, given the terms of the Plea Agreement, Wolf was not ineffective for failing to seek an "adjust[ment]" to a sentence below 39 months based upon the time that Gilbert spent in custody.

## V

Finally, the Court takes up Gilbert's claim that Wolf was ineffective for failing to recognize and advise him that the time he spent in state custody would not be

credited against the sentence imposed by the Court.  Assuming *arguendo* that Wolf

performed deficiently in these regards, Gilbert is still not entitled to relief because

he has not shown that he suffered prejudice.

Gilbert offers three theories as to how Wolf's misunderstanding of the

sentencing credit issue caused him (Gilbert) to suffer prejudice, but all are belied by

the record.  Gilbert's first theory of prejudice is as follows:

> First, counsel could have informed Gilbert that his pretrial
> federal custody with the U.S. Marshals would be dead time
> and he could be returned to state custody by waiving any
> anti-shutting provisions of the Interstate Agreement on
> Detainers. That procedure is a common practice, which is
> effectuated by simply executing a form waiver.  *Given the
> state violation was a "technical violation" for the same
> federal offense, there is a reasonable probability that the
> state would have required Gilbert to serve a minimum
> sentence, allowing him to be returned to federal custody
> via a detainer and thus start his credit under the federal
> sentence.*  And, of course, there would have been no
> undischarged sentence for Count 2 to run consecutive to at
> that point.

(Mot. ECF No. 41, PageID.208; emphasis added.)  The record reveals, however, that

the Parole Board did not view Gilbert's parole violation as an insignificant infraction

worthy of only a "minimum sentence."   On the contrary, the Parole Board

determined that Gilbert's violation "show[ed] that he cannot be managed in the

community." (Parole Board Notice of Action, ECF No. 47-4, PageID.255.)   The

Parole Board therefore required Gilbert to serve a term of 24 months in custody

based upon the violation. (*See id*., PageID.253.)  Given the Parole Board's action,

Gilbert has failed to show a reasonable probability that he would have received a "minimum sentence" from the Parole Board if Wolf had given him correct advice about the sentence credit issue and if, based upon that advice, he had been able to appear before the Parole Board earlier.

Second, Gilbert argues that if Wolf had properly understood the sentencing credit issue, he could have negotiated a better plea deal for Gilbert. (*See* Mot., ECF No. 41, PageID.209.)  But the Government says that it had substantial evidence against Gilbert – "including a full video confession" – and that it was simply unwilling to make "a better plea offer." (Gv't. Resp., ECF No. 47, PageID.243.) There is no persuasive evidence that the outcome of the plea negotiations would have been different if Wolf had properly understood the sentencing credit issue.

Third, Gilbert argues that "the exhibits attached by the government in their Response expose the prejudice to [him] when his attorney failed to seek his return to state custody and the failure of the government to discharge their writ after sentencing on October 1, 2019." (Gilbert Reply Br., ECF No. 52, PageID.297.) Gilbert explains the prejudice that is supposedly reflected in these exhibits as follows:

> At sentencing, the Court indicated that attorneys had represented that the MDOC would impose little or no time for parole violations and release them to the federal authorities as a cost-saving matter. The Assistant U.S. Attorney agreed "one hundred percent" (Sentencing, ECF No. 33, PageID.153-154).

Gilbert was arrested on June 22, 2018 and was lodged in the Genesee County Jail and "available" to MDOC for a violation of his parole (Exhibit 2, ECF No. 47-3, Page ID.249). According to the government, MDOC "revoked Gilbert's probation and sentenced him to 24 months custody" on July 19, 2019 (ECF No. 47, PageID.231). Yet, Gilbert's MDOC parole violation hearing was not until August 2, 2018 (ECF No. 47, Page ID.231; Exhibit 1, ECF No. 47-2, PageID.247). At that hearing, Gilbert pled no contest with an agreement that the Office of Field Programs (OFP) would recommend a 12 month continuance. In any event, assuming a 24 month continuance of "flop" to serve, Gilbert's time to be released on parole was June 24, 2020 (24 months after June 25, 2018). Had Gilbert been released from his federal writ on October 1, 2019, he would have been released after a short time, as stated at sentencing, but at the latest on June 24, 2020. And his federal time began on October 1, 2019. That means he would have spent 8 months and 23 days in state custody (October 1, 2019 to June 24, 2020) and then released to federal authorities. Gilbert could have received that time as credit on his federal sentence for his concurrent sentence on Count 1. Instead, the BOP released Gilbert back to MDOC on March 5, 2021 and the Parole Board will not release him on parole until April 28, 2021 (ECF No. 47, PageID.231; ECF No. 47-5, Page ID.256 identified as Exhibit 4). And if Gilbert had been released on the federal writ on October 1, 2019, there would have been no consecutive sentence on Count 2 to run consecutively as Gilbert would have served more than his 15 months on Count 1 by June 24, 2020.

(*Id.*, PageID.297-298.)

The Court had some difficulty following the entirety of this argument. But, in any event, the Court does not find this theory of prejudice to be sufficient. As noted above, in order to show prejudice, Gilbert needed to demonstrate a reasonable

34

probability that the outcome of the proceedings would have been different. The Court is not persuaded that the series of events postulated by Gilbert above was reasonably probable.

For all of the reasons stated above, Gilbert is not entitled to relief, and the Court will deny his motion.

## VI

Gilbert may not appeal the Court's decision unless the Court issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That standard is met when "reasonable jurists could debate whether ... the petition should have been resolved in a different manner." *Welch v. United States*, 136 S. Ct. 1257, 1263 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, reasonable jurists could debate the Court's conclusion that Gilbert is not entitled to the relief he seeks. Thus, the Court will issue Gilbert a certificate of appealability.

## VII

For all of the reasons explained above, **IT IS HEREBY ORDERED** that:

- Gilbert's motion to vacate his sentence (ECF Nos. 41, 50) is **DENIED**; and

- Gilbert is **GRANTED** a Certificate of Appealability with respect to the

  Court's denial of his motion.

  s/Matthew F. Leitman
  MATTHEW F. LEITMAN
  UNITED STATES DISTRICT JUDGE

Dated:  July 26, 2021


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 26, 2021, by electronic means and/or ordinary mail.

  s/Holly A. Monda
  Case Manager
  (810) 341-3794